GALLATIN NATURAL GAS CO., APPELLANT, *v.* PUBLIC SERVICE COMMISSION, RESPONDENT.

(No. 6,095.)

(Submitted March 31, 1927.   Decided May 4, 1927.)

[256 Pac. 373.]

*Corporations—Public Utilities—Public Service Commission— Merger of Corporate Entities by Acquisition of Stock—How Viewed by Courts—Presumptions—Interstate Commerce.*

Corporations—Corporation Furnishing Natural Gas from Another State to Domestic Distributing Company of Which It is Owner, *Held* a Public Utility Subject to Jurisdiction of Public Service Commission.
  1. *Held,* under the rule that where one corporation acquires and holds all of the stock of another corporation, save a share each

held by directors for the purpose of preserving the corporate organization of the latter the two corporations in effect become merged, and the holding company will be deemed to own and control the other, that where a foreign corporation licensed to do business in Montana conveyed natural gas by pipe-line from a neighboring state into this state and furnished it to a domestic corporation whose entire capital stock with the exception of five of its 2,500 shares it owned, for distribution to its customers, was a public utility within the meaning of section 3881, Revised Codes 1921, and as such subject to the jurisdiction of the Public Service Commission of Montana and therefore required to furnish such Commission annual reports of its operations.

Same—Continuation of Proven Condition—Presumption.

2. In the absence of a showing by plaintiff corporation that it was no longer the owner of practically all of the capital stock of the company which distributed the natural gas conveyed into the state by the former, the presumption declared by section 10606, subdivision 32, Revised Codes 1921, that the proven conditions continue, obtains.

Same—Courts will Disregard Corporate Entity, When.

3. Courts look through forms to substance and ignore a mere colorable corporate entity, to the end that rights of third parties shall be protected.

Trial by Court Without Jury—Admission of Incompetent Testimony—Presumption.

4. In an action tried without a jury the presumption is that, if the court erroneously admitted incompetent testimony, it disregarded it in arriving at its conclusion.

Corporations—Transportation of Natural Gas from One State to Another—Interstate Commerce—When Subject to State Regulation.

5. Conceding that the transportation of natural gas from one state to another through pipe-lines is interstate commerce, yet where the transporting corporation furnishes the gas to a domestic corporation of which it is the owner, for distribution to consumers within this state, it is subject to state regulation and the jurisdiction of the Public Service Commission as a public utility.

Same—Enforcement of Order of Public Service Commission Requiring Public Utility to Make Report of Operations cannot Result in Depriving Utility of Property Without Due Process of Law.

6. The enforcement of an order made by the Public Service Commission requiring a public utility to make annual report of its operations cannot of itself result in depriving the utility of its property without due process of law.

---

[1]   Evidence, 23 **C. J.**, sec. 1966, p. 144, n. 30.   Gas, 28 **C. J.**, sec. 21, p. 560, n. 17.

[2]   Evidence, 22 **C. J.**, sec. 29, p. 90, n. 39.

[3]   Corporations, 14 **C. J.**, sec. 20, p. 59, n. 70, 71; sec. 25, p. 62, n. 82.

[4]   Appeal and Error, 4 **C. J.**, sec. 2726, p. 776, n. 57.

[5]   Commerce, 12 **C. J.**, sec. 104, p. 80, n. 53 New.   Gas, 28 **C. J.**, sec. 21, p. 560, n. 17.

[6]   Gas, 28 **C. J.**, sec. 21, p. 560, n. 17.

3.  See 7 **R. C. L.** 27.

4.  See 2 **R. C. L.** 252.

[79 Mont. 269.]

*Appeal from District Court, Yellowstone County; Robert C. Stong, Judge.*

ACTION by the Gallatin Natural Gas Company against the Public Service Commission of Montana. From a judgment for defendant, plaintiff appeals. Affirmed.

*Mr. A. M. Gee,* of the Bar of Wyoming, *Mr. Hal. W. Stewart* and *Messrs. Snell & Arnott,* for Appellant, submitted a brief; *Mr. Gee* and *Mr. Stewart* argued the cause orally.

The order of the commission is an unlawful interference with interstate commerce. The cases of *Kansas Natural Gas Co.* v. *Haskell,* 172 Fed. 545, *Haskell* v. *Cowham,* 187 Fed. 403, 109 C. C. A. 235, *West* v. *Kansas Natural Gas Co.,* 221 U. S. 229, 35 L. R. A. (n. s.) 1193, 55 L. Ed. 716, 31 Sup. Ct. Rep. 564 [see, also, Rose's U. S. Notes], and *Haskell* v. *Kansas Natural Gas Co.,* 204 U. S. 217, 56 L. Ed. 738, 32 Sup. Ct. Rep, 442, agree on these propositions: First: That natural gas is a proper article of interstate commerce. Second: That action of a state, which prevents, interferes with or burdens gas transportation, is void as in conflict with the federal power under the Constitution. Third: That inaction of Congress on the subject is a declaration that such interstate commerce shall be free from regulation.

The following cases reach the same conclusions: *Manufacturers' Gas & Oil Co.* v. *Indiana Natural Gas & Oil Co.,* 155 Ind. 545, 53 L. R. A. 134, 58 N. E. 706; *State* v. *Indiana & Ohio O., G. & M. Co.,* 120 Ind. 575, 6 L. R. A. 579, 22 N. E. 778; *Ozark Pipe Line Corp.* v. *Monier,* 266 U. S. 555, 69 L. Ed. 439, 45 Sup. Ct. Rep. 184 [see, also, Rose's U. S. Notes]; *West* v. *Kansas Natural Gas Co.,* 221 U. S. 229, 35 L. R. A. (n. s.) 1193, 55 L. Ed. 716, 31 Sup. Ct. Rep. 564 [see, also, Rose's U. S. Notes]; see, also, *Pennsylvania* v. *West Virginia,* 262 U. S. 553, 32 A. L. R. 300, 67 L. Ed. 1117, 43 Sup. Ct. Rep. 658.

We now come to the consideration of another question concerning interstate commerce, that is, the distinction between regulation by the state of the rates at which the gas is sold "at the burner tips," which regulation has been held valid, and regulation of rates where gas is transported from one state to another and there sold wholesale to distributing companies. This latter case is exactly the case before the court, and such regulation has been held unlawful by the courts. (*Mill Creek Coal & Coke Co.* v. *Public Service Com.*, 84 W. Va. 662, 7 A. L. R. 1081, 100 S. E. 557, P. U. R. 1920A, 704; *Public Utilities Com.* v. *Landon*, 249 U. S. 236, 63 L. Ed. 577, 39 Sup. Ct. Rep. 268 [see, also, Rose's U. S. Notes Supp.]; *Pennsylvania Gas Co.* v. *Public Service Com.*, 252 U. S. 23, 64 L. Ed. 434, 40 Sup. Ct. Rep. 279.)

The following cases sum up the entire situation and distinguish clearly between regulation of rates at which gas is sold to consumers and regulation of rates for which gas is transported from one state into another: *Missouri ex rel. Barrett* v. *Kansas Natural Gas Co.*, 282 Fed. 341; *Central Trust Co.* v. *Consumers' L., H. & P. Co.*, 282 Fed. 680; *Missouri* v. *Kansas Natural Gas Co.*, 263 U. S. 696, 68 L. Ed. 1027, 44 Sup. Ct. Rep. 132; *Attleboro Steam & Electric Co.* v. *Public Service Com.*, 46 R. I. 496, 129 Atl. 495, P. U. R. 1925E, 495.

Summarizing briefly on the interstate commerce questions raised herein, we submit that the foregoing cases leave no doubt that the law pertaining to this action is as follows: That the transportation of gas from one state into another is interstate commerce; that gas so transported is in interstate commerce from the time it is gathered in the producing state until it is passed into the mains for distribution in the consuming state; that even though (as is not the case here) the transportation and distribution should be carried on by the same identical company, the two transactions are separable; that the transporting agency cannot be interfered with, burdened nor its business regulated by either state, as such interference, burden or regulation, would be a direct violation of the interstate commerce clause of the federal Constitution; and

that while a state may regulate the business of distributing gas that has moved in interstate commerce, its jurisdiction is confined to the distributing end and does not extend to the transporting end.

As applied to the case now before the court, we submit that, regardless of any alleged relationship between the Billings and Gallatin companies, the state of Montana, through its Public Service Commission, has no jurisdiction over the Gallatin company because the Gallatin company is engaged solely in interstate commerce. The jurisdiction of the Commission over the gas commences when the gas passes into the local mains; that jurisdiction is not challenged nor is it in question here, as the Billings Gas Company is admittedly a public utility. The effect of the Commission's attempted regulation over the Gallatin Natural Gas Company would be a direct burden upon interstate commerce and not merely incidental.

The Gallatin Natural Gas Company is not a public utility. The duty undertaken by the purveyor or producer of gas, and not the use made by the purchaser, is the test of whether or not the purveyor is a public utility. (*Allen* v. *Railroad Com.*, 179 Cal. 68, 175 Pac. 466, P. U. R. 1919A, 398; *Re Tucson Farms Co.*, P. U. R. 1920B, 624; *Pittsburgh* v. *Pittsburgh Rys. Co.*, P. U. R. 1920C, 458.) The Gallatin Natural Gas Company is not a public utility, either of itself or on account of any alleged relationship between it and the Billings Gas Company. It does not sell gas to the public generally nor does it come within any of the definitions of public utility. Therefore, independently of the interstate commerce question involved, the Public Service Commission of Montana has no jurisdiction over the Gallatin Natural Gas Company.

*Mr. L. A. Foot*, Attorney General, *Mr. I. W. Choate*, Assistant Attorney General, and *Mr. E. G. Toomey*, Attorney for the Public Service Commission, submitted a brief; *Mr. Choate* and *Mr. Toomey* argued the cause orally.

The order of the Commission does not constitute an interference with interstate commerce. (*Pennsylvania Gas. Co.* v.

*Public Service Com.*, 252 U. S. 23, 64 L. Ed. 434, 40 Sup. Ct. Rep. 279 [see, also, Rose's U. S. Notes Supp.].) We do not controvert the general propositions established by the cases cited in appellant's brief to the effect that the transportation of natural gas from one state to another is interstate commerce. We take it to be also settled by numerous decisions of the supreme court of the United States, including *Public Utilities* v. *Landon,* 249 U. S. 236, 63 L. Ed. 577, 39 Sup. Ct. Rep. 268, that the piping of natural gas from one state to another and its sale and delivery to independent local gas companies is interstate commerce. In the case at bar, however, we have no such situation. The appellant company that pipes the gas interstate, and the Billings Gas Company, that sells it intrastate, are not independent companies; they are, in fact, one and the same outfit so far as the ultimate sale of gas "at burner tips" to the consumer at Billings is concerned. Being, therefore, in fact a single enterprise although cloaked under two separate corporate entities, it is our contention that the same rule should govern as was applied in the *Pennsylvania Gas Case* above cited, where gas was furnished direct to consumers in another state by the same company that piped the gas interstate

The Gallatin Natural Gas Company is a public utility. The cases cited by appellant lay down the general principle that there must be "profession of public service," and that the mere furnishing of light or heat to one or two or a limited number of consumers without "profession of public service" does not constitute one a public utility. This is doubtless true, but we repeat, that where, as in this case, the evidence shows that one company through an *alter ego* distributes gas in the form of heat, light and power to hundreds of consumers at Billings and elsewhere, such company is in fact rendering such service to "other persons" within the meaning of section 3881, Revised Codes 1921, and should be classed as a public utility regardless of its protestations or professions to the contrary. Such was the holding of the court in *Ohio Mining Co.* v. *Public Utility Com.,* 106 Ohio St. 138, 140 N. E. 143. In that case, much as in this,

a corporation, the Southern Ohio Power Company, owned an electric generating plant and transmission line. It disposed of its entire output of electric energy by private contract to the Athens Electric Company and the Hawkins Power Company, two other separate corporations. It was shown, however, that the Southern Ohio Company owned all the stock of the two other companies. The court held that under this state of facts the Southern Ohio Power Company was a public utility company.

MR. JUSTICE MYERS delivered the opinion of the court.

This is an action to vacate an order of the Public Service Commission of Montana.

Public utilities within the state of Montana are defined by the statutes of Montana (sec. 3881, Rev. Codes, 1921) as "every corporation, both public and private, company, individual, association of individuals, their lessees, trustees or receivers appointed by any court whatsoever, that now or hereafter may own, operate or control any plant or equipment, or any part of a plant or equipment, within the state, for the production, delivery or furnishing for or to other persons, firms, associations or corporations, private or municipal, heat, street-railway service, light, power in any form or by any agency, water for business, manufacturing, household use or sewerage service, whether within the limits of municipalities, towns and villages or elsewhere, telegraph or telephone service."

The defendant herein is a creation of the state of Montana, an instrumentality of government, "invested with full power of supervision, regulation and control of such utilities, subject to the provisions of this Act." (Public Utilities Act, sec. 3881, supra.) By the Act of which section 3881, supra, is a part, among other powers conferred upon it, defendant is given power to require of a public utility an annual report of its operations, to investigate its business and the value of its property and to fix and determine such rate or rates, tolls, charges or schedules, to be charged the public for its services, as shall

be just and reasonable. As a basis for any order in the premises, to be made by defendant, a public hearing may be ordered by it and, had by it. Any party in interest, dissatisfied with an order of defendant, the result of such a hearing, may bring, in the district court of the proper county, an action to vacate and set aside such order. From the judgment of the district court, an appeal to this court may be taken.

Billings Gas Company is a Montana corporation. The plaintiff herein is a Delaware corporation, duly authorized and licensed to do and transact business in the state of Montana, under the laws applicable to foreign corporations.

Plaintiff acquires natural gas from oil and gas companies in Wyoming, at a point a short distance south of the Montana-Wyoming boundary line. From thence, it conveys such natural gas, by pipe-line, over the state boundary line, to the city limits of the city of Billings, in Yellowstone county, Montana. There it delivers the gas to the Billings Gas Company and that company, through its mains, distributes the gas to its customers, the people of Billings, the consumers. The Billings Gas Company makes therefor, to its customers, fixed charges, upon the quantity used at the burner tips. The Billings Gas Company retains sixty per cent of its gross collection and pays plaintiff forty per cent thereof. That arrangement between the Billings Gas Company and plaintiff is one of contract. Plaintiff contracts to supply the Billings Gas Company with what gas it requires for its needs and the compensation is stipulated in the contract. Plaintiff asserts that the Billings Gas Company is the only customer of plaintiff.

Along the way of its pipe-line to Billings, and in Montana plaintiff furnishes gas, in the same manner, to a number of consumers in each of the towns of Laurel, Bridger and Fromberg. That is done, too, under its contract with the Billings Gas Company and upon the same terms. The Billings Gas Company bills the consumers for the gas consumed by them, collects the charges and settles therefor with plaintiff, according to contract terms. It is the understanding between the com-

panies that at the outskirts of each town plaintiff delivers the gas to the Billings Gas Company and it distributes the gas to the consumers.

When plaintiff's agent and official, one McFayden, was engaged in obtaining rights of way, from the Montana boundary line to Billings, for its pipe-line, he took, in his name, deeds for the rights-of-way. In order to obtain amicably such rights-of-way and as a part of the consideration therefor, there was inserted in many of the deeds a clause that the grantor might ''secure gas from said line, for consumption, at the same rate as paid by householders, for domestic use, in the town of Laurel, by installing, at his own expense, the apparatus prescribed by the company.'' Later, McFayden conveyed, by deed, to plaintiff all of the rights-of-way, subject to all of the terms and conditions embodied in the right-of-way deeds to McFayden. It is stipulated in the record that the right-of-way deeds number, in all, about 197 and that 81 or 82 thereof contain the aforementioned provision for furnishing grantors gas for domestic use. The record shows, by the testimony of an official of plaintiff, that twenty-one of such grantors have availed themselves of that privilege. The evidence in the record shows, however, that the Billings Gas Company bills such customers, collects the charges and settles therefor with plaintiff, according to contract terms.

Confessedly, the Billings Gas Company long has been considered a public utility and for a long period it has rendered to defendant the annual reports required by law and otherwise has submitted itself, as a public utility, to the jurisdiction of defendant. Plaintiff has always denied, and denies now, that it is a public utility subject to the jurisdiction of defendant.

In April, 1925, defendant issued and had served on plaintiff an order, reciting that the Gallatin Natural Gas Company appeared to be a public utility and, as such, doing business in Montana and that it had not filed with the Public Service Commission of Montana any annual report of its operations and ordering it to file annual reports for certain past years,

as required by law, or to show cause why it should not do so.

Plaintiff made due answer and by its answer denied that it was a public utility subject to the jurisdiction of the Public Service Commission of Montana or had been doing business as such. The answer then made certain allegations, setting forth the relations alleged to exist between the Gallatin Natural Gas Company and the Billings Gas Company and tending to show that the Gallatin Natural Gas Company was not doing anything to constitute it a public utility within the state of Montana and claiming it was engaged solely in interstate commerce business and was not subject to the jurisdiction of the Public Service Commission of Montana. It concluded by declining to file any annual report.

A hearing was ordered and set and was had. Evidence was taken and the Public Service Commission of Montana rendered its decision that the Gallatin Natural Gas Company was a public utility subject to the jurisdiction of the Public Service Commission of Montana and made an order that the Gallatin Natural Gas Company file with the Commission reports of its operations for the years of 1921, 1922, 1923 and 1924 and thereafter annually.

Thereafter, the Gallatin Natural Gas Company, the plaintiff herein, brought, in the district court of Yellowstone County, an action to vacate and set aside such order of the Public Service Commission of Montana, the defendant herein. In its complaint, plaintiff alleges its incorporation and purposes and the incorporation and purposes of the Billings Gas Company and the business relations between the two companies and alleges that they are separate and distinct corporations, each having its separate and distinct functions and each doing business with the other as separate entities. The complaint further alleges substantially much of the statement of facts heretofore in this opinion recited, as an introduction. It denies that plaintiff is a public utility or has ever acted as such; denies that the plaintiff ever delivered, supplied or sold natural gas to the public or to any town, city or municipality in Montana; alleges that it sells exclusively to the Billings Gas Company and

that its business is wholly interstate.  It recites the facts of the hearing and the order of defendant, in the premises, and alleges that the order is unlawful in a number of specified particulars.  It prays that such order be vacated and set aside and for a decree that plaintiff is not a public utility and not subject to the jurisdiction of defendant and for other relief. Defendant's answer admits certain allegations of the complaint and denies generally all others and prays that the action be dismissed.

The cause was tried to the court without a jury.  Evidence was had and the court, according to the requirement of statute, referred the evidence to the Public Service Commission of Montana, for further consideration, and it returned the same and refused to rescind or modify its order in the premises.  Thereupon, the court made findings in favor of defendant and in accordance with the decision and order, in the premises, of the Public Service Commission of Montana and rendered and entered its judgment that the action be dismissed at the cost of plaintiff.  From that judgment plaintiff appealed to this court and it assigns a number of specifications of error.  One of them assigns as error the ruling of the court in the admission of certain testimony.  All of the others challenge the holding that plaintiff is a public utility subject, in any degree, to the jurisdiction of the Public Service Commission of Montana.

The vital question upon this appeal is: Are plaintiff and [1] the Billings Gas Company, in effect and in law, one and the same; or, in other words and in the words of the statute (sec. 3881, supra), does plaintiff own, operate or control the plant or equipment of the Billings Gas Company for the delivery of or for furnishing, for or to other persons, heat, light or power?  If that question, in either form, may be answered in the affirmative, we shall feel compelled to hold that plaintiff is a public utility and, to some extent, subject to the jurisdiction of defendant.  Confessedly, the gas furnished its customers by the Billings Gas Company is furnished for consumption and it is a matter of common knowledge that natural gas is

consumed for the purpose of furnishing heat, light or power. Therefore, the Billings Gas Company, in furnishing its customers with natural gas, furnishes them with heat, light or power.

In order to answer the foregoing vital question, deemed the test upon this appeal, we shall have to go to the record. The record is voluminous. It contains not only the evidence adduced at the trial but, by stipulation, the evidence had at the hearing before the Public Service Commission of Montana, upon its order to show cause, and, also, the evidence had at a prior hearing before the Commission upon an application of the Billings Gas Company for an increase in the rates charged its customers; all of which was before the trial court. The record contains a vast amount of documentary evidence. The entire record has been perused and much sifting was required to discover the evidence particularly applicable to the issues of this case.

Mr. F. B. Firmin, secretary and treasurer of the Billings Gas Company, testified: "The authorized capital stock of the Billings Gas Company is $250,000; the Gallatin Natural Gas Company owns all of the stock but five shares; it is a fact that the Gallatin Natural Gas Company owns all of the stock but five shares; it is a fact that the Gallatin Natural Gas Company is the absolute owner of the Billings Gas Company, with the exception of five shares of stock; those five shares are owned by the directors; those parties that own those five shares are all officers or directors of the Billings Gas Company."

The record shows there are five directors of the Billings Gas Company, holding one share each of its stock, and the officers are from among the directors. It appears that the western headquarters of the Gallatin Natural Gas Company is at Casper, Wyoming, and that the general books of the Billings Gas Company are kept at that place.

By the testimony of Mr. R. J. Lemert, a certified public accountant who examined the books, records, files and documents of the Billings Gas Company, it is shown that, in January, 1922, the Gallatin Natural Gas Company acquired the entire

capital stock of the Billings Gas Company and that, thereafter and early in 1922, it parted with five shares and retained the balance; that the capital stock is and was then $250,000, consisting of 2,500 shares of the par value of $100 each; that 2,495 shares of the par value of $249,500 are held by the Gallatin Natural Gas Company and the remaining five shares are held by the officers and directors of the Billings Gas Company, "as qualifying shares"; that the Gallatin Natural Gas Company took over the 2,495 shares of stock of the Billings Gas Company, of the par value of $100 per share, at a valuation of $180 per share and values its holding thereof at $449,100.

The annual report of the Gallatin Natural Gas Company to the Montana State Board of Equalization, for the year ended March 1, 1924, contains this item: "Assets, stock of Billings Gas Company, $449,100."

The annual report of the Billings Gas Company to the Public Service Commission of Montana, for 1922, and its annual report to the Commission, for 1923, each, contains this statement: "Name of owning, controlling or operating corporation: Gallatin Natural Gas Company." Each report is sworn to by the vice-president and the secretary-treasurer of the Billings Gas Company.

Mr. A. M. Gee, attorney for plaintiff, testified that "the Gallatin Natural Gas Company has, at all times, controlled the policy of the Billings Gas Company."

At the hearing upon the application of the Billings Gas Company for an increase in the rates charged its customers (made a part of this record), both the Billings Gas Company and the Gallatin Natural Gas Company appeared by counsel. When, at the beginning of the hearing, the question of who appeared as counsel for the Billings Gas Company was asked, Mr. G. E. Snell, of the law-firm of Snell & Arnott, an attorney and the vice-president of the Billings Gas Company, said: "A. M. Gee and Snell & Arnott." Next was asked who appeared for the Gallatin Natural Gas Company and Mr. Snell

said: "They are the same thing." That was an admission of record, made by an attorney who represented both companies and who was an official and director of the Billings Gas Company. At the hearing, Mr. Gee and Messrs. Snell & Arnott, as counsel, represented both companies.

There is, in the record, no denial of any of the foregoing recited proof. Much of it came from witnesses for plaintiff or officials of one of the companies or from admissions by counsel for plaintiff.

From the foregoing recited portions of the record, we say there can be no doubt that the Gallatin Natural Gas Company owns and controls the Billings Gas Company and, through it, owns, controls and operates the plant and equipment of the latter company, within the state of Montana, for the delivery and furnishing, to and for other persons, of natural gas for heat, light or power. The Billings Gas Company is the creature of the Gallatin Natural Gas Company; one of its assets, functions, instrumentalities. When the Billings Gas Company furnishes natural gas to consumers, it is the Gallatin Natural Gas Company, under another name, which is furnishing it. We do not say there is any fraud or that any is intended. There is no reason so to say. Doubtless, it is a system, arrangement, convenience, matter of bookkeeping; but, even so, that does not alter facts, results. It seems to us wholly unwarranted to say the Gallatin Natural Gas Company does not control the Billings Gas Company. Undisputed evidence shows it does.

It may be said the Gallatin Natural Gas Company does not own the Billings Gas Company and that they are not identical, because the former owns only 2,495 shares of the 2,500 shares of the stock of the latter. In effect, the former company practically owns the latter. The fact that the five directors of the latter company own or hold in their names a share each is inconsequential. The company has five directors; a director must be a stockholder; a stockholder must have in his name some portion of the stock. It is necessary, in order to preserve the corporate existence, that each director hold in his

name some stock. It is a common practice. Furthermore, such an arrangement cannot, any way, interfere with the control of the holding company.

It is insisted in the brief of counsel for plaintiff that nothing was adduced at the trial to show that at the time of the trial the foregoing described conditions existed. They were shown to have existed in the very recent past and "a thing once proved to exist is presumed to continue as long as is usual for things of that nature." (Sec. 10606, Rev. Codes 1921.) So long as the companies continue to do business as usual, with no apparent change of relations, we think it fair to presume the proven conditions continue. That is the presumption of law. If not true in fact, it devolved upon plaintiff so to show. It made no effort so to do.

[2]

The record discloses that all the assets of the Billings Gas Company are pledged, under a deed of trust, to the Central Trust Company of Illinois, William R. Davis, trustee. It was executed about nine years before the Gallatin Natural Gas Company was organized and acquired all of the stock of the Billings Gas Company. At this time, an indebtedness of $267,000 exists under that trust deed. Counsel for plaintiff, in their brief, say "the foreclosure of this trust deed would entirely divorce the Billings Gas Company and the Gallatin Natural Gas Company from any alleged relationship which * * * might exist between them; there is no certainty whatever that said deed of trust will not be foreclosed." Very well; we do not gainsay it. The trust deed has not yet been foreclosed. When it may be foreclosed and title to all the property now in the name of the Billings Gas Company shall pass to the Trust Company, without right of redemption, then it may be said the Gallatin Natural Gas Company does not own, control or operate the plant and equipment of the Billings Gas Company. The Gallatin Natural Gas Company then simply will have lost some of its property and assets; the Billings Gas Company then will have no plant or equipment; the Gallatin Natural Gas Company cannot operate a plant of the

Billings Gas Company when it shall have none to be operated. That, however, yet has not come to pass.

There is abundant authority for holding that, when one corporation acquires and holds all of the stock of another corporation, save a share each held by directors, necessary to preserve the corporate organization of the latter, the two corporations practically become merged, identical, the same to every intent and purpose; and that the holding company owns, controls and operates the other company and conducts its affairs and is the motivating power. It is so held in *Ohio Min. Co.* v. *Public Utilities Com.*, 106 Ohio St. 138, 140 N. E. 143. That case is precisely analogous to the case at bar. The Ohio Mining Company, the plaintiff, was a consumer of electric energy and complained of the Southern Ohio Power Company, the Hocking Power Company and the Athens Electric Company. The Southern Ohio Power Company owned and operated a large electric generating plant, at which electric energy was generated. The Hocking Power Company and the Athens Electric Company, located at other points than the location of the Southern Ohio Power Company, obtained from the latter company, by wholesale, electric energy and retailed it to consumers; just what is done in the case at bar with natural gas. The Southern Ohio Power Company was charged with being a public utility and denied it, averring that it was in the wholesale business only and supplied only two customers, the other two companies. Admittedly, those two companies were public utilities. It was shown, however, that the Southern Ohio Power Company, in effect, owned the two retailing companies and, on that account, the court held that the Southern Ohio Power Company was retailing, merely under other names, and was, therefore, a public utility. It was held that whatever the retailing companies did was done by the Southern Ohio Power Company, the owner and controlling power. In the case as above reported (106 Ohio St. 138, 140 N. E. 143), the opinion says the Southern Ohio Power Company owns the stock of the Hocking Power Company and the Athens Electric Company.

That might lead one to believe that the Southern Ohio Power Company owned all of the stock, every share, of those two companies and in that respect slightly differed from the facts in the case at bar. However, substantially the same case was again before the court, on other aspects and under a different title, in *Southern Ohio Power Co.* v. *Public Utilities Com.*, 110 Ohio St. 246, 34 A. L. R. 171, 143 N. E. 700. There it is disclosed in the opinion that the Southern Ohio Power Company was "the owner of all of the stock, except the necessary number of shares to qualify a board of directors of the Hocking Power Company, of Nelsonville, and the Athens Electric Company, of Athens." That makes it exactly similar to the case at bar. In that case, the fact that each of the directors of each of the two latter companies held enough stock to qualify as a director did not prevent the court from holding that the Southern Ohio Power Company owned, controlled and operated the two other companies.

The same principle of law as that we have declared is upheld also in the following cases: *State* v. *Standard Oil Co.*, 49 Ohio St. 137, 34 Am. St. Rep. 541, 15 L. R. A. 145, 30 N. E. 279; *Brundred* v. *Rice*, 49 Ohio St. 640, 34 Am. St. Rep. 589, 32 N. E. 169; *First Nat. Bank of Chicago* v. *Trebein Co.*, 59 Ohio St. 316, 52 N. E. 834; *Cincinnati Volksblatt Co.* v. *Hoffmeister*, 62 Ohio St. 189, 78 Am. St. Rep. 707, 48 L. R. A. 732, 56 N. E. 1033; *Erickson* v. *Minneapolis & Ont. Power Co.*, 134 Minn. 209, 158 N. W. 979; *Gamewell Fire Alarm Tel. Co.* v. *Fire & Police Tel. Co.*, 116 Ky. 759, 76 S. W. 862; *Des Moines Gas Co.* v. *West*, 50 Iowa, 16; *Interstate Tel. Co.* v. *B. & O. Tel. Co. of Baltimore County*, 51 Fed. 49; *Baltimore & O. Tel. Co. of Baltimore County* v. *Interstate Tel. Co.*, 54 Fed. 50; *In re Reiger, Kapner & Altmark*, 157 Fed. 609; *In re Watertown Paper Co.*, 169 Fed. 252; *Westinghouse Elec. & Mfg. Co.* v. *Allis-Chalmers Co.*, 176 Fed. 362; *Gay* v. *Hudson River Elec. Power Co.*, 187 Fed. 12; *Clere Clothing Co.* v. *Union Trust & Savings Bank*, 224 Fed. 363; *Hunter* v. *Baker Motor Vehicle Co.*, 225 Fed. 1006; *Lehigh Min. & Mfg. Co.* v.

*Kelly,* 160 U. S. 327, 40 L. Ed. 444, 16 Sup. Ct. Rep. 307 [see, also, Rose's U. S. Notes]; *Miller & Lux* v. *East Side Canal & Irr. Co.,* 211 U. S. 293, 53 L. Ed. 189, 29 Sup. Ct. Rep. 111. From a few other pertinent authorities so holding, we reproduce some excerpts:

"The Great Western Company was undoubtedly a mere creature of the pulp company, having no independent business existence and organized solely for the purpose of facilitating the business of the latter." (*In re Muncie Pulp Co.,* 139 Fed. 546.)

"The agreement, in the first instance, of the New York Baker corporation was in effect the agreement and obligation of the Ohio corporation, as it in fact owned, controlled and managed that corporation." (*Hunter* v. *Baker Motor Vehicle Co.,* 190 Fed. 665.)

"Courts no longer hesitate to look through forms to sub-
[3]     stance and ignore a mere colorable corporate entity, to the end that rights of third parties shall be protected.   *   *   *
The evidence was sufficient to justify the view that the Prager-Schlessinger Company was but an *alter ego* of the appellant." (*Spokane Merchants' Assn.* v. *Clere Clothing Co.,* 84 Wash. 616, 147 Pac. 414.)

"The abstraction of the corporate entity should never be allowed to bar out and pervert the real and obvious truth." (*Seymour* v. *Spring F. C. Assn.,* 144 N. Y. 333, 26 L. R. A. 859, 39 N. E. 365.)

"There are exceptional cases in which the courts refuse to recognize the corporate entity, as distinguished from the stockholders, if the refusal of such recognition is necessary in order to get at the truth." (*Scott* v. *Prescott,* 69 Mont. 540, 223 Pac. 490.)

"It is clear that a corporation is in fact a collection of individuals who, in the case of modern private corporations, really own its property and carry on the corporate business, through the corporation and its officers and agents, for their own profit and benefit, and that the idea of the corporation as a legal entity or person apart from its members is a mere

fiction of the law, introduced for convenience in conducting the business in this privileged way." (14 C. J. 59 and numerous cases cited.)

"The existence of a corporation independently of its shareholders is a fiction. * * * The rights and duties of an incorporated association are in reality the rights and duties of the persons who compose it and not of an imaginary being." (1 Morawetz on Private Corporations, 2d ed., 3.) "The statement that a corporation is an artificial person or entity, apart from its members, is merely a description, in figurative language, of a corporation viewed as a collective body: a corporation is really an association of persons and no judicial dictum or legislative enactment can alter this fact." (1 Morawetz on Private Corporations, 2d ed., 221.)

"The legal fiction of distinct corporate existence may be disregarded in a case where a corporation is so organized and controlled and its affairs are so conducted as to make it merely an instrumentality or adjunct of another corporation." (14 C. J. 62 and numerous cases cited.)

It may be done "where a corporation is so organized and controlled and its affairs are so conducted as to make it merely an instrumentality, conduit or adjunct of another corporation." (1 Fletcher's Cyclopedia of Corporations, 63 and cases cited.)

"The acquisition by one corporation of all the shares in another corporation has been thought to partake of the nature of a temporary consolidation, so long as such ownership continues. Hence, the dominant company may guarantee bonds issued by the subordinate company; for * * * the guarantor company is regarded as doing little more than guaranteeing its own bonds." (2 Mechem's Modern Law of Corporations, 876.)

We believe the foregoing excerpts apply to the case at bar. The highest court in the land, the supreme court of the United States, has rendered a decision which, in our opinion, is pertinent to the issues of the case at bar and upholds the principle of law we have enunciated.

The Commodities Clause of the Hepburn Act, an Act of Congress (34 U. S. Stats. 584, c. 3591), provides in substance that it is unlawful for a railroad company to transport, not for its own use, in interstate commerce, any articles manufactured, produced or mined by it or which it owns in whole or in part or in which it has any interest, direct or indirect. The Lehigh Valley Railroad Company, a railroad corporation, owned a railroad, used in interstate commerce transportation. It owned practically all of the stock of a coal-mining company and transported, not for its own use, in interstate commerce, coal produced by such coal-mining company. In the case of *United States* v. *Lehigh Valley R. R. Co.*, 220 U. S. 257, 55 L. Ed. 458, 31 Sup. Ct. Rep. 387 [see, also, Rose's U. S. Notes], the United States government sought an injunction to prevent the railroad company from so doing. It went to the supreme court upon a question of pleading and that court said: "While the right of a railroad company, as a stockholder, to use its stock ownership for the purpose of a bona fide separate administration of the affairs of a corporation in which it has a stock interest may not be denied, the use of such stock ownership, in substance, for the purpose of destroying the entity of a producing corporation and of commingling its affairs in administration with the affairs of the railroad company, so as to make the two corporations virtually one, brings the railroad company so voluntarily acting as to such producing corporation within the prohibitions of the Commodities Clause." In the trial of the case at bar, Mr. Gee, attorney for plaintiff, testified, as we have recited, that "the Gallatin Natural Gas Company has, at all times, controlled the policy of the Billings Gas Company." We believe that brings this case within the purview of the decision in *United States* v. *Lehigh Valley R. R. Co.*, supra.

Counsel for plaintiff, in their brief, contend that the case of *Ohio Mining Co.* v. *Public Utilities Com.*, supra, cited by counsel for defendant, is of no great force in behalf of defendant, because in a subsequent case, *Southern Ohio Power Co.* v. *Public Utilities Com.*, supra, the same court held that, be-

cause of what counsel for plaintiff call "a very slight change of ownership," the Southern Ohio Power Company was no longer a public utility. That contention of counsel for plaintiff is pregnant, we think, with an admission that it would require some change of ownership to render the Gallatin Natural Gas Company not a public utility. Howbeit, it is sufficient to say no such change of ownership nor any at all was shown in the trial of the case at bar. Therefore, such a condition is not before us.

There are some cases, a few of them cited by counsel for plaintiff, which hold that the mere ownership by one corporation of a majority or practically all of the stock of another corporation, if unaccompanied by acts of dominion or control by the holding corporation, does not merge the two in interest or affect the distinction between them as separate entities or make the holding company the motivating power of or responsible for the acts of the other company. They, however, are based upon absence of acts of dominion or control. In the case at bar, we think there is ample evidence of dominion over and control of the Billings Gas Company by the Gallatin Natural Gas Company.

As affecting that conclusion, plaintiff's eighth specification [4] of error assigns as error the action of the trial court in overruling the objection of plaintiff to certain testimony, upon cross-examination, of C. R. Hetzler, a witness for plaintiff. The objection came after the answer of the witness and the judge said: "He has answered and I will let it go, subject to your objection." The case was tried without a jury and, if the testimony was not competent, the presumption is that the court, in deciding the case, did not consider it. It is not necessary, however, for us to decide whether or not the testimony was competent, for the object of the testimony was established abundantly and incontrovertibly by other evidence which was competent and to which objection was not made.

As a result of the foregoing recited facts and the foregoing cited authorities, we hold that plaintiff is a public utility, doing business, as such, in Montana.

The greater part of the brief of counsel for plaintiff is devoted to the contention that plaintiff is engaged wholly in interstate commerce. We do not deny that plaintiff is engaged in interstate commerce. However, viewing it, as we do and as we have declared, that, when the Billings Gas Company furnishes gas to consumers, it is the plaintiff which, as master and owner of the Billings Gas Company, is doing it, there is authority of the highest character that a corporation so engaged in interstate commerce is subject to local, state, regulation of rates; regulation by the state of the price charged the consumer. It is found in *Pennsylvania Gas Co.* v. *Public Service Com.*, 252 U. S. 23, 64 L. Ed. 434, 40 Sup. Ct. Rep. 279 [see, also, Rose's U. S. Notes Supp.]. If, as we hold, the plaintiff and the Billings Gas Company are in effect one, one in interest and one in law (for the purposes of this case), that case and this one are precisely analogous. Counsel for plaintiff stress the case of *Public Utilities Com.* v. *Landon*, 249 U. S. 236, 63 L. Ed. 577, 39 Sup. Ct. Rep. 268. That case is distinguished from that of *Pennsylvania Gas Co.* v. *Public Service Com.*, supra, which discusses it. In the former case, the Kansas Natural Gas Company conveyed natural gas across a state line and wholesaled and delivered it, for distribution and sale at retail, to an independent company. The opinion says of the Kansas Natural Gas Company: "Nor did it own any interest in a defendant distributing company." The facts in the case at bar are far different. We hold that, with relation to plaintiff, the Billings Gas Company is not an independent company but, to the contrary, a dependent company—dependent upon plaintiff, the dominant, owning, controlling company; the company which Mr. Gee said, in his testimony, "has, at all times, controlled the policy of the Billings Gas Company." Here it may not be said of plaintiff, as the court said of the Kansas Natural Gas Company, that it does not own any interest in a distributing company. Plaintiff owns substantially all of a distributing company and controls its policy. We do not consider *Public Utilities Com.* v. *Landon,* supra, applicable.

Having arrived at the conclusions that plaintiff is a public utility; that it and the Billings Gas Company are in effect the same; that plaintiff owns, operates and controls a plant and equipment, within this state, for the delivery and furnishing, for and to other persons, of heat, light and power, there is no doubt of the right of defendant to regulate the price, at burner tip, charged by the Billings Gas Company (plaintiff's creature) for gas furnished consumers, as is being done. We have no doubt of the right of defendant to declare plaintiff a public utility. We have no doubt of the right of defendant to order and require plaintiff, as a public utility, to furnish defendant with annual reports, required by law of public utilities, for past years and annually hereafter. That is as far as we are called upon to decide in this case. That is all there is involved in the issues of this case. It is all we have any right to decide. The order made by defendant declared plaintiff a public utility, subject to plaintiff's jurisdiction, and ordered it to file with the Public Service Commission of Montana full and complete annual reports of all its operations for the years ended December 31, 1921, 1922, 1923 and 1924, and thereafter annually. Plaintiff brought this action to vacate that order. The judgment of the trial court declared that the court found that plaintiff was then, and at all times mentioned in its complaint, a corporation owning, operating and controlling plant and equipment, within the state, for the delivery and furnishing, to other persons, firms, associations and corporations, of heat, light and power, in the form of and by the agency of natural gas, and, as such, a public utility, subject to the jurisdiction of the Public Service Commission of Montana, and that the order of said Commission, numbered 1426, made and entered, August 25, 1925, was a lawful order; and it ordered the action dismissed at plaintiff's cost. We are to affirm or reverse that judgment and thereby, in effect, to uphold or vacate the order of the defendant. The effect of upholding it is only to declare plaintiff a public utility and order that it must furnish the Public Service Commission of Montana the annual reports, for the past, called for and hereafter annually.

Plaintiff's contention that the order, heretofore made, of the **[6]** Public Service Commission of Montana, if enforced, will deprive it of its property, without due process of law, is unfounded. Nothing of that kind can result from enforcement of an order to make annual reports. When anything of that kind may be attempted, the question may be presented and passed upon.

In accordance with the views herein expressed, the judgment of the district court is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES STARK, MATTHEWS and GALEN concur.

Rehearing denied June 11, 1927.