THE PEOPLE OF THE STATE OF NEW YORK ex rel. TOBACCO AND ALLIED STOCKS, INC., Petitioner, v. MARK GRAVES and Others, Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, March 3, 1937.

*Cohen, Cole, Weiss & Wharton [Walter H. Pollak of counsel; John F. Wharton, Harry J. Leffert, Ruth I. Wilson and Myer D. Mermin with him on the brief], for the petitioner.*

*John J. Bennett, Jr., Attorney-General [Wendell P. Brown, Assistant Attorney-General, of counsel], for the respondents.*

HILL, P. J. Petitioner, a Delaware corporation, brings up for review its franchise tax assessments for four years. The taxes for 1929 and 1932 were computed under the option designated (2) of subdivision 10 of section 214 of the Tax Law, and were based on the value of its entire capital stock. For 1930 and 1931 the taxes were measured by petitioner's entire net income under sections 209, 214 and 215. The taxes were paid under protest, the petitioner has obtained an order of certiorari to review the assessments, and asks for a refund. The Commission seeks to sustain the legality of the taxes computed under option (2) of section 214 upon the entire capital stock, and the taxes measured by the entire net income under section 209 upon the ground that petitioner transacted all its business and employed its entire capital in New York.

Petitioner submits the argument (1) that it neither did business nor employed capital within the State of New York or elsewhere, but was engaged in the conservation and investment of accumulations, which is not classified as engaging in business under franchise taxing laws; (2) that should it be determined that its activities amount to doing business, instead of conserving and investing accumulations, it argues, concerning the taxes of 1930 and 1931 measured by its entire net income, that a part of the business was transacted outside the State of New York, and that the only statutory warrant for measuring the tax by the entire net income rather than by the fraction thereof attributable to

the business done in the State, is the concluding paragraph of subdivision 10 (now subdivision 11) of section 214, which provides: " If a corporation is subject to a tax under the provisions of this article of the Tax Law, and it maintains no regular place of business outside of this State, except a statutory office, it shall be taxed on a base measured by its entire net income, or entire issued capital stock, or otherwise, as hereinbefore provided." It is asserted that this enactment contravenes both the due process and equal protection clauses of the Fourteenth Amendment of the Constitution of the United States, as the distinction between foreign corporations which maintain places of business other than statutory offices outside this State and those which do not, is an unreasonable and arbitrary basis of classification for franchise tax purposes. (3) Concerning the taxes of 1929 and 1932 computed upon the issued capital stock, it asserts that as substantially all of its assets were intangible, the taxable situs was Delaware, the corporate domicile, and that taxes may not be computed under option (2) upon the part of its capital stock which represents these assets located outside the State of New York; that the only statute which by its terms permits assessments measured by property outside the State is subdivision 10 (now 11) which is ineffective, being unconstitutional for the reasons earlier stated. The brief submitted by counsel for the petitioner also discusses and challenges subdivision 9 of section 214.

" Real property and tangible personal property shall be taken at its actual value where located. The value of share stock of another corporation owned by a corporation liable hereunder shall for purposes of allocation of assets be apportioned in and out of the State in accordance with the value of the physical property in and out of the State representing such share stock." It is argued that this subdivision, while not in express terms permitting a tax to be measured by capital located outside the State, prescribes an arbitrary rule as to the taxable situs of intangibles, for shareholders do not own the corporate property of a corporation issuing stock, but are entitled only to participate in profits and upon liquidation to share in the distribution of assets after the payment of debts, and, therefore, that in fixing the taxable situs of the property of a shareholder, the location of the tangible property of the corporation issuing the share may not be considered. (*Rhode Island Hospital Trust Co.* v. *Doughton*, 270 U. S. 69, and similar authorities.) This argument as to subdivision 9 is somewhat collateral, as that section was not applied by the Commission, the tax being computed on the entire capital, that subdivision applying only to a tax computed on the part of the capital stock

which by its terms is allocated to New York State. (This amount it was stipulated on the hearing was about $400,000.)

Petitioner was incorporated under the laws of Delaware in January, 1929, and during that year purchased in New York about $2,500,000 of the stock of corporations engaged in the tobacco and allied trades, and thereafter during the years involved bought at least thirty-one other issues and sold at least twenty-nine. This " trading " or " reinvestment " resulted in profits of about $225,000 during two of the years and a loss of $450,000 during the remainder of the period. It continuously loaned money on call in varying amounts up to $300,000. No similar activities occurred at any place outside the State. At all times it had money on deposit in varying amounts up to $78,000 and no bank deposit outside the State. It did not rent an office, but owned office furniture located in the offices occupied by its president and vice-president in New York city, and there had part time office employees drawing varying aggregate annual salaries up to $6,500. Meetings of the directors were held at this office. It had no other office except the statutory office in Delaware. It incurred expenses in New York for legal services, printing, stationery, postage, rental of safe deposit vault and for stock registry and stamps. In reports to the State Tax Department it stated its business to be trading and dealing in securities, but an official who was a witness before the Commission, in describing its activities, distinguished between " trading " and " investing," saying that the latter was the occupation of petitioner, and that its officers and employees investigated, studied and did research work outside New York in connection with the tobacco trade; and that the loaning of money in New York did not amount to the doing of business as it was but a temporary use of surplus funds for which it received meager compensation.

" The word ' business ' embraces everything about which a person can be employed; and a sum is ' invested ' whenever its amount is represented by anything but money." (*Parker Mills* v. *Commissioners of Taxes*, 23 N. Y. 242, 243, 244.) " It remains to consider whether these corporations are engaged in business. ' Business ' is a very comprehensive term and embraces everything about which a person can be employed." (*Flint* v. *Stone Tracy Co.*, 220 U. S. 107, 171.) Business is defined as " That which occupies the time, attention and labor of men for the purpose of livelihood or profit." (Bouvier's Law Dict. [Rawle's 3d Rev.] p. 406; *Flint* v. *Stone Tracy Co.*, *supra*, p. 171.) " The doing of a single act pertaining to a particular business will not be considered engaging in or carrying on the business, yet a series of such acts would be so considered." (Bouvier's Law Dict. [Rawle's 3d Rev.] p. 406.) In

*People* v. *Horn Silver Mining Co.* (105 N. Y. 76, 83) the products of a foreign corporation were sold in New York and a portion of the receipts deposited in banks or loaned there where the president, secretary and treasurer had their offices, the directors held their annual meetings and declared dividends. This was held to constitute doing business. In *Matter of City Bank Farmers Trust Co.* v. *Graves* (272 N. Y. 1) the extent of the transactions in the stock market was not markedly different than here, and the court said (p. 6): " That it was in fact conducting a business is reasonably clear. With profits and losses from the sale of securities in the amounts as stated above and the numerous transactions from which those profits and losses resulted, it was doing more than merely investing and reinvesting the trust fund and collecting and distributing the income as in an ordinary trust." The facts distinguish *People ex rel. Manila Electric R. R. & L. Corp.* v. *Knapp* (229 N. Y. 502). There the relator, a foreign corporation, deposited with a trustee in New York the securities of other foreign corporations to secure its own issue of debentures, and in New York received the income from the deposited securities and distributed it among the owners of the debentures. It did not trade in or change the securities deposited and it was held that attention to the single transaction did not amount to doing business within the purview of the Tax Law, the opinion citing *Von Baumbach* v. *Sargent Land Co.* (242 U. S. 503), wherein it is enunciated that a corporation is " investing " when it " has reduced its activities to the owning and holding of property and the distribution of its avails and doing only the acts necessary to continue that status " while it is " doing business " when it " is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes." Under these authorities, it seems clear that petitioner is engaged in business within the purview of the Franchise Tax Law. However, it is suggested that even so, a portion of the business is done outside New York State which would require the application of the statutory provision asserted to be unconstitutional. Counsel classifies the outside work as " research and investigation into conditions in the tobacco and associated industries." One of the officers was in Washington some months in connection with a bill pending before the Congress to impose a processing tax upon tobacco and also in connection with the preparation of labor codes in the tobacco industry under the former NIRA laws. Such a visit it is to be hoped was an altruistic effort to aid Congress to enact wise laws for the benefit of all the people and the code-making authorities to fix just labor codes beneficial to all the parties concerned. Thus it would have

no relation to business. However, if the element of personal or corporate gain was involved, the effort was incidental to the business of trading in stocks which was carried on in New York. Also, information was exchanged between officials of the corporation and other persons who resided outside New York as to the probable trends in the tobacco trade. Some of the consultants were specialists in the cigarette field, others as to cigars, and still others gave information as to the trade in snuff and chewing tobacco. On this advice a decision would be made between the stocks of corporations which manufactured cigarettes, cigars or snuff, and those which gave promise of the greatest profit were purchased. The interchange of ideas was incidental to the business of buying and selling stocks in New York, and only indicates that petitioner's deals were made after investigation rather than on a hunch. I conclude that all of the business was transacted in New York State.

The assertion that petitioner's capital was all outside the State of New York rests upon the ancient maxim (*mobilia sequuntur personam*) that movables follow the person of the owner and that as petitioner secured its franchise to be a corporation in Delaware, the juristic concept follows that its person, and, therefore, its intangible property, was there. Latterly intangibles have been determined to have a taxable situs of their own which may be away from the domicile of the owner if they have become integral parts of some local business. (*Farmers Loan & Trust Co.* v. *Minnesota*, 280 U. S. 204, 213.) The certificates of stock kept in New York to be traded in there, had acquired a "business situs" and a "commercial domicile" there at the place where "the management functioned." (*Wheeling Steel Corp.* v. *Fox*, 298 U. S. 193.)

Thus having arrived at a conclusion that petitioner transacted all of its business in New York and that all of its capital was employed there, the constitutionality of subdivision 9 and the last paragraph of subdivision 10 (now subdivision 11) of section 214 is not involved, as the determination of the State Tax Commission may be sustained under unquestioned provisions of the statute. Assuming without granting that the questioned provisions are unconstitutional, petitioner has not suffered and, therefore, may not raise the question.

The determination should be confirmed, with fifty dollars costs and disbursements.

RHODES, McNAMEE, BLISS and HEFFERNAN, JJ., concur.

Determination confirmed, with fifty dollars costs and disbursements.