J. B. STARKEY, as Tax Collector, v. NELL W. CARSON, as
Executrix of the Last Will and Testament of John F.
Carson, deceased.

189 So. 385

En Banc

Opinion Filed May 26, 1939

*George Couper Gibbs,* Attorney General, *J. Compton
French,* Assistant Attorney General, and *John C. Blocker,*
for Appellant;

*L. P. Hardee, Rancy H. Martin* and *Sam H. Mann, Jr.,* for Appellees.

WHITFIELD, J.—This appeal is limited to an order denying a motion to strike specified portions of the bill of complaint relating to liability to taxation of certain intangible personal property. Pertinent parts of the bill in effect allege that the Plaintiff, John F. Carson, is a citizen and resident of Pinellas County, Florida, and has been such citizen and resident during the times mentioned in this bill; that the Tax Assessor of Pinellas County, Florida, for the taxable year 1938 did assess and value the intangible personal property of this Plaintiff at the sum of $1,111,960.00 and the tax assessor has levied upon said valuation a tax equivalent to two mills on such assessed valuation, and the tax assessor and board of county commissioners have certified the roll carrying such assessment and levy to the defendant tax collector for collection of said two-mill tax predicated upon said assessed valuation, and taxes so assessed thereon are by law made a lien upon all the real and personal property owned by plaintiff in Pinellas County, Florida; that said assessment and tax levy are illegal and void, and should in equity and good conscience be declared illegal and void, and the collection or attempted collection thereof should be enjoined for reasons herein stated; that plaintiff filed his return of intangible personal property in this State owned by plaintiff; that the tax assessor, in placing a valuation for taxation purposes, ignored said return and unlawfully undertook to and did assess as the valuation of intangible personal property for plaintiff the total sum named above, which said valuation was arrived at in the following manner, to-wit:

"Shares of stock of this plaintiff in the Paducah Coca-Cola Bottling Co. were given a valuation of Five Hundred Seventy Thousand ($570,000.00) dollars; shares of stock owned by this Plaintiff in Evansville Coca-Cola Bottling Co. were given a valuation of One Million Four Hundred Ninety-Five Thousand ($1,495,000.00) dollars; notes and bonds claimed by said tax assessor to be owned by this Plaintiff were given a valuation of One Hundred Fifty-eight Thousand Nine Hundred Twenty ($158,920.00) Dollars. Making a grand total for such valuation purposes of Two Million Two Hundred Twenty-three Thousand Nine Hundred Twenty ($2,223,920.00) Dollars, and after having given such valuation to such intangible personal property, said Tax Assessor did divide such total valuation in half and thereupon assess one-half of such grand total as the assessed valuation of the intangible personal property of this Plaintiff."

That Plaintiff upon being notified of such assessed valuation did thereupon and prior to the meeting of the Board of Equalization of said county, register his protest of such assessed valuation with the tax assessor, (and did then and there make known to such tax assessor that none of the stock or stock certificates evidencing stock ownership of the plaintiff in Paducah Coca-Cola Bottling Company was ever in the State of Florida, further that none of the stock or stock certificates evidencing the ownership of such stock in the plaintiff of Evansville Coca-Cola Bottling Company was ever in the State of Florida) and that the plaintiff owned no notes or bonds other than those set forth in Exhibit 'A' to the return as aforesaid filed with the Tax Assessor, to-wit:

| Class | Character and Full Description of Intangible Property | | |
|---|---|---|---|
| A | No. Shares | Description | Value |
| Tax 2 Mills At Value Jan. 1st. | 37850 | Southern Brewing Co. Par value $1 | 1000 |

| B | Face Amount | Description of Security | |
|---|---|---|---|
| Tax 2 Mills At Value Jan. 1st | 12,500 | Bonds issued by Southern Brewing Co. | 6250.00" |

and that such assessed valuation was excessive, but that notwithstanding the foregoing, said tax assessor adhered to the original assessed valuation and failed and refused to alter or amend the same; that the tax equalizing board of the county refused to change the assessment as made.

("Plaintiff further avers that at all times during the year 1938 the business situs of the Plaintiff and the intangible personal property, as was owned by him other than the stock and bonds listed in his Return, Exhibit 'A' hereto, was outside of the State of Florida and in, to-wit: the States of Indiana and of Kentucky.)

"Plaintiff stands ready, able and willing to pay such taxes as may be legally imposed on such intangible personal property as may be legally taxable for the year 1938, and offers to pay such taxes legally imposed.

"WHEREFORE the premises considered, Plaintiff prays as follows:

"1. That the Defendant be required to make answer

to this Bill of Complaint, but not under oath, answer under oath being hereby expressly waived.

"2. That the Court do decree the assessment herein complained of to be unlawful and void or in the event the court be of the opinion that portion only of such assessment is unlawful and void, that this Court do so decree and that in either event this Court do enjoin the Defendant, as Tax Collector of Pinellas County, Florida, and his successors in office, from enforcing or attempting to enforce the collection of taxes predicated upon such assessment or such portion thereof as this Court shall decree to be unlawfully made and that this Court do grant such injunction *pendente lite*.

"3. For such other and further relief in the premises as to this Court shall seem meet and just."

The defendant filed a motion to strike the allegations of the bill which are contained within the parentheses as appears above including an allegation "that neither said stock nor any certificate evidencing same were ever in the State of Florida."

Plaintiff, John F. Carson, having died, his executrix was substituted as appellee.

The principal question to be determined is:

"Has the State of Florida by the Intangible Personal Property Taxation Act of 1931 authorized a levy of tax on shares of stock in a foreign corporation owned by a resident of Florida where the stock certificates are physically located outside of the State of Florida and have never been within said State?"

Section 1, Article IX of the Florida Constitution of 1885, as amended, is as follows:

"Section 1. The Legislature shall provide for a uniform and equal rate of taxation, except that it may pro-

vide for special rate or rates on intangible property, but such special rate or rates shall not exceed five mills on the dollar of the assessed valuation of such intangible property, which special rate or rates, or the taxes collected therefrom, may be apportioned by the Legislature, and shall be exclusive of all other State, County, district and municipal taxes; and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, education, literary, scientific, religious or charitable purposes. (Amended, Senate Joint Resolution 358, Acts 1923; adopted at general election, 1924.)"

Chapter 15789, Acts of 1931, contains the following:

"Section 2. 'Intangible Personal Property' is hereby defined as all personal property which is not in itself intrinsically valuable but which derives its chief value from that which it represents.

"Section 3. For the purpose of taxation Intangible Personal Property is hereby divided into three (3) classes to be known as Class A, B, and C, Intangible Personal Property.

"(1) Class A Intangible Personal Property is hereby defined as being all stocks, or shares of incorporated or unincorporated companies, all bonds except bonds of the several municipalities and counties of the State of Florida, and also such bonds or governmental bonds as may be exempt from taxation under the Constitution or laws of the United States or the State of Florida.

"(2) Class B Intangible Personal Property shall include all notes, bonds and other obligations for the payment of money which are secured by mortgage, deed of trust, or other leases or liens upon real or personal estates situated in Florida, provided that only that part of the

value of the mortgage, deed of trust, lease or other lien, the property of which is located within the State shall bear to the whole value of the property described in said obligation, shall be classified and known as Class B, Intangible Personal Property.

"(3) Class C Intangible Personal Property shall include all other intangible personal property not embraced in Class A and B Intangible Personal Property, provided that intangible personal property belonging to the State of Florida, or any political subdivision thereof, and/or any Religious, Charitable, Benevolent or Educational Association shall be exempt from taxation. Provided, however, that nothing herein contained shall apply to franchises.

"Section 4. 'Taxpayers' shall mean a person, firm or corporation, who or which shall be liable to taxes under this Act for Intangible Personal Property."

Section 7. BASIS OF ASSESSMENT. The taxable value of all intangible personal property which is assessed on said tax roll shall be on the same basis of valuation as is used for the assessment for taxation of real or personal property.

"Section 8. RETURNS OF INTANGIBLE PERSONAL PROPERTY FOR TAXATION. It is hereby made the duty of every person, firm or corporation owning or having the control, management or custody of intangible personal property in this State which is subject to taxation under the laws of Florida, including trustees, executors, administrators, receivers and all other fiduciaries, to return the same for taxation to the county assessor of taxes in the proper county on or before the first day of April of each and every year, giving the character and description of such intangible personal property. Provided that Intangible Personal Prop-

erty tax returns shall not be open to inspection except by the officers of the State and county whose duties require their examination thereof or under an order of a court of competent jurisdiction requiring the same as relevant evidence. No officer examining such returns shall divulge their contents, other than the total value and tax thereon, or make or permit to be made any copy or list therefrom. When any intangible personal property tax or assessment shall have been paid, it shall be the duty of the tax assessor to return and deliver to the taxpayer, at his request, the original intangible personal property tax return or returns of the taxpayer upon or in connection with which such intangible personal property taxes shall have been assessed and levied.

"If a taxpayer shall not request the surrender of his intangible personal property tax return after having paid his intangible personal property tax, it shall be the duty of the tax assessor to destroy all intangible personal property tax returns filed with him within six (6) months after the same shall have been paid."

"Section 12. There is hereby annually levied and assessed on all Class A Intangible Personal Property to be apportioned to the State for State purposes, a tax of two (2) mills on the dollar of the taxable value of such Class A Intangible Property, to be assessed and collected as other taxes are assessed and collected for State purposes, and to be paid into the General Revenue Fund of the State of Florida.

"(a) There is hereby annually levied and assessed on all Class B Intangible Personal Property to be apportioned to the State for State purposes, a tax of two (2) mills on the dollar of the taxable value of such Class B Intangible Personal Property, to be assessed and collected as

other taxes are assessed and collected for State purposes, and to be paid into the General Revenue Fund of the State of Florida.

"(b)   There is hereby annually levied and assessed on all Class C Intangible Personal Property to be apportioned to the State for State purposes, a tax of one-tenth (1/10) of one (1) mill on the dollar of the taxable value of such Class C Intangible Personal Property, to be assessed and collected as other taxes are assessed and collected for State purposes, and to be paid into the General Revenue Fund of the State of Florida."

"Section 19.   TAX UPON INTANGIBLE PERSONAL PROPERTY SHALL BE A LIEN ON REAL OR PERSONAL PROPERTY BELONGING TO TAXPAYER.   All intangible personal property taxes shall be a lien on all the real or personal property of the taxpayer in the County in which they are assessed, or any other County in the State of Florida, from the time the tax upon intangible personal property became due."

The above quoted organic section commands that "the Legislature * * * shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law," and the intent of Chapter 15789 is that all intangible personal property which is subject to taxation under the laws of Florida, shall be assessed and taxed.

The law does not exempt from taxation any intangible personal property owned by citizens of this State, though such property has never been physically in this State, except such as are exempt under Section 3 of Chapter 15789. Such exemptions do not include the intangible personal property here involved.

Section 8 of Chapter 15789 interpreted with reference

to the commands of the Constitution and the intendments of Chapter 15789, means that all intangible personal property which is subject to taxation under the laws of Florida shall be returned for taxation" by every person, firm or corporation" "in this State" "owning or having the control, management or custody" of such property.

The statute has reference to all taxable intangible personal property ·that has its taxation *situs* in this State, which includes the intangible personal property in this case, no business *situs* of such property elsewhere being duly shown. See Hunt v. Turner, 54 Fla. 654, 45 So. 509; Farmers Loan & Trust Co. v. Minnesota, 280 U. S. 204, 50 Sup. Ct. 98, 74 L. Ed. 371, 65 A. L. R. 1000; State v. Beardsley, 77 Fla. 803, 82 So. 794; First Bank Stock Corp. v. Minnesota, 301 U. S. 234, 57 Sup. Ct. 677, 81 L. Ed. 1061. . As to taxation *situs* of National Bank stock, see Atlantic Nat'l Bank v. Simpson, filed August 2, 1938; 26 R. G. L., p. 282, *et seq.*

The allegation that the intangibles have a business situs in other named States is insufficient to show a business *situs* elsewhere that would relieve the intangibles from taxation at the domicile of the owner. See Hunt v. Turner, *supra.*

The court erred in denying the motion to strike portions of the bill of complaint which were not pertinent in alleging a defense to the enforcement of the tax. See Blodgett v. Silberman, 277 U. S. 1, 48 Sup. Ct. 410, 72 L. Ed. 749; First Nat'l Bank of Boston v. State of Maine, 284 U. S. 312, 52 Sup. Ct. 174, 76 L. Ed. 313; Baldwin v. State of Missouri, 281 U. S. 586, 50 Sup. Ct. 436, 74 L. Ed. 1056.

Reversed and remanded for appropriate proceedings.

TERRELL, C. J., and BROWN, BUFORD, CHAPMAN, and THOMAS, J. J., concur.